IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**WALSH,**

        Plaintiff,

v.

**COMMISSIONER SOCIAL SECURITY ADMINISTRATION,**

        Defendant.

Civ No. 3:24-cv-01867-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff asks this Court to review a final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title II. The Court has jurisdiction to review such determinations under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    In seeking judicial review, Plaintiff alleges that the Administrative Law Judge neglected to account for her persistence problems and erroneously identified jobs she can perform. Pl.'s Soc. Sec. Br. 1, 5, ECF No. 10. Plaintiff also contends that the ALJ did not properly account for her non-epileptic seizures in the Residual Functional Capacity. *Id.* at 1.

    Because the ALJ properly incorporated Plaintiff's persistence limitations into the RFC and because she reasonably considered the effects of Plaintiff's non-epileptic seizures, the Commissioner's decision is **AFFIRMED**.

## LEGAL STANDARD

    i.    **The five-step disability determination process**

1 – OPINION AND ORDER

At the hearing stage of a Social Security Disability Insurance Benefits application, ALJs follow a five-step process to determine whether a claimant is disabled and entitled to benefits under the Social Security Act. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 20 C.F.R. § 404.1520. A claimant bears the burden of proof for steps one through four. *Tackett*, 180 F.3d at 1098; *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (if a claimant shows that they cannot return to their old job, the burden of proof shifts to the Commissioner to show that they can perform other kinds of work). If the claimant is found "disabled" or "not disabled" at any of the five steps, the process terminates. *Tackett*, 180 F.3d at 1098. Throughout the process, the ALJ determines credibility, resolves conflicts in the medical testimony, and squares ambiguities. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020).

At step one, the ALJ ascertains whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.101.1520(a)(4)(i). At step two, the ALJ decides whether a claimant's impairment, or combination of impairments, is "severe" within the meaning of the Regulations. 20 C.F.R. § 404.1520(a)(4)(ii). Step two is a baseline "screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citation modified). If a claimant alleges any mental impairments at step two, however, their claim undergoes a special review process.

During this process, if an ALJ finds that the claimant has a "severe" mental impairment, they determine the nature and degree of that impairment. 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). ALJs rate a claimant's functionality given their mental impairment using four factors: (1) a claimant's ability to understand, remember, or apply information; (2) a claimant's ability to interact with others; (3) a claimant's ability to concentrate, persist, or maintain pace; and (4) a claimant's ability to adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3);

2 – OPINION AND ORDER

*see also Hoopai v. Astrue*, 499 F.3d 1071, 1077—78 (9th Cir. 2007) (an ALJ must rate the degree of functional limitations for the four factors but needn't make more specific findings of the claimant's functional limitations). Each of these four factors receives a severity rating: none, mild, moderate, marked, or extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). When a claimant has a severe mental impairment, the ALJ proceeds to step three to identify whether the impairment meets the criteria of those included in the "Listings of Impairments." 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Part 404, Subpart P, App. 1. If a claimant's impairment does not meet or equal a listing, the process continues to determine benefits eligibility.

At step four, the ALJ assesses a claimant's Residual Functional Capacity, which is "a summary of what the claimant is capable of doing . . . ." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The RFC must contemplate all the claimant's Medically Determinable Impairments and their related symptoms, such as pain. 20 C.F.R. §§ 416.945(a)(1)—(4). The ALJ ultimately evaluates whether a claimant can do work they have done before given their RFC. *Ford*, 950 F.3d at 1149; *see also Tackett*, 180 F.3d at 1098—99. Past relevant work is substantial gainful activity performed long enough for the claimant to have meaningfully learned how to do it. *Ford*, 950 F.3d at 1149; *see also* 20 C.F.R. § 404.1560(b)(1).

If a claimant is found unable to perform past relevant work, the ALJ moves to the final step. At step five, where the burden shifts to the Commissioner, the ALJ considers the applicant's background and RFC to decide whether they can work in the national economy. *Gutierrez v. Colvin*, 844 F.3d 804, 806 (9th Cir. 2016); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (once a claimant shows that they cannot perform past relevant work, the Commissioner bears the burden of showing that the claimant can do some other kind of work existing "in significant numbers" in the national economy).

To meet their burden at step five, ALJs can pose a hypothetical to a vocational expert that incorporates the claimant's RFC. *Valentine*, 574 F.3d at 689. The vocational expert then "opines on what kind of work someone with the limitations of the claimant could hypothetically do." *Id.* An ALJ's hypothetical to the expert must accurately describe the claimant's true limitations, in which case the ALJ can rely on the expert's testimony. *Leach v. Kijakazi*, 70 F.4th 1251, 1254—55 (9th Cir. 2023).

After the vocational expert testifies, the ALJ must finally determine whether the claimant can find work in the national economy that accommodates their age, education, work experience, and RFC. *Valentine*, 574 F.3d at 689—90; *see also Tackett*, 180 F.3d at 1100—01 (the Commissioner bears the burden at step five to show that the claimant can perform some other work considering RFC, age, education, and prior employment). If the ALJ concludes that there is suitable work in significant numbers in the national economy, they will deny the claimant's application for disability benefits.

### ii.   A district court's jurisdiction to review an ALJ's decision

At the conclusion of the hearing, the ALJ issues a written decision. 20 C.F.R. §§ 404.900(a)(3), 404.929—61, 416.1400(a), 416.1429—61. After a finding of non-disability, a claimant can request review from the Administration's Appeals Council. 20 C.F.R. § 404.900(a)(4). If the Appeals Council declines the request for review, it becomes the Commissioner's final decision. *Sims v. Apfel*, 530 U.S. 103, 106—07 (2003) (should the Appeals Council deny a claimant's request for review, then the ALJ's opinion becomes the final, appealable decision). A claimant can then seek judicial review because they will have exhausted the administrative procedures prescribed by the Social Security Act. 42 U.S.C. § 405(g); *see also Bass v. Soc. Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989) (a claimant's failure to exhaust the

prescribed administrative procedures deprives the district court of jurisdiction). In reviewing an ALJ's decision, federal courts may: (1) affirm the ALJ's finding of non-disability; (2) remand the case for further administrative proceedings, including another hearing; or (3) remand the case for an immediate award of benefits. 42 U.S.C. § 405(g).

On appeal, a district court reviews whether the ALJ's findings are based on legal error or "not supported by substantial evidence in the record as a whole." *Tackett* 180 F.3d at 1097; *see also Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993) (the Commissioner's denial of benefits is "disturbed only if it is not supported by substantial evidence on the record as a whole or it is based on legal error."). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett*, 180 F.3d at 1098 (citation modified). It is enough evidence for a reasonable person to accept as "adequate to support a conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citation modified). If the evidence is in equipoise, "the court may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (citation modified).

A district court considers the record as a whole, "weighing both the evidence that supports and detracts from" the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). A reviewing court cannot affirm the Commissioner's decision "on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation modified). But the Commissioner's findings stand if supported by substantial evidence and not based on legal error.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff applied for disability insurance benefits on April 11, 2022, alleging disability beginning on January 15, 2022. Tr. 169—175. Approximately a year later, on May 6, 2023, the Commissioner denied her benefits application. Tr. 69—75. In July, Plaintiff filed a request for

reconsideration that was denied on November 6, 2023. Tr. 74—75, 85—88. Plaintiff then requested a hearing by an Administrative Law Judge, which occurred in front of the Honorable Paula M. Martin on June 12, 2024. Tr. 15—30. The ALJ denied Plaintiff's request for disability insurance benefits and the Appeals Council declined to review that decision. Tr. 1—6. At that time, Plaintiff's application for benefits became ripe for judicial review.

The core issue is whether Plaintiff is disabled under §§ 216(i) and 223(d) of the Social Security Act as determined by the five-step process. Tr. 25; Pl.'s Soc. Sec. Br. 1. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 15, 2022, the alleged disability onset date. Tr. 17. At step two, the ALJ determined that Plaintiff has the following severe impairments: non-epileptic seizure, depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, and attention deficit hyperactivity disorder. *Id.* These impairments "significantly limit the ability to perform basic work activities . . . ." *Id.* At step three, the ALJ ascertained that none of Plaintiff's impairments, or combination of impairments, meets or equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. Tr. 18.

Regarding the "Paragraph B" criteria for mental impairments—relevant at steps two and three—the ALJ concluded that Plaintiff has no more than a moderate limitation in any of the domains. Tr. 19. The ALJ found that "because the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'Paragraph B' criteria are not satisfied." *Id.* The ALJ also noted that Plaintiff failed to establish the presence of "Paragraph C" criteria because their mental disorder in this listing category is not "serious and persistent." *Id.*

Before step four, the ALJ crafted Plaintiff's Residual Functional Capacity. The RFC provides:

>After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except they can never climb ladders, ropes, or scaffolds; can frequently climb ramps and stairs, balance as defined in the SCO, stoop, kneel, crouch, and crawl; can tolerate no exposure to hazards such as unprotected heights and heavy machinery; can do no driving as part of the job duties; can understand, remember and carry out simple instructions; can deal with occasional changes in a work setting; can use judgment to make simple work related decisions; cannot perform work requiring a specific production rate (such as assembly line work); and is able to tolerate frequent contact with supervisors, occasional contact with co-workers, and no direct contact with the general public.

Tr. 20. The ALJ found that Plaintiff does not have past relevant work, which advances the evaluation process to the fifth and final step. Tr. 17, 23. Here, the ALJ adjudged that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 24. Thus, "the claimant has not been under a disability, as defined in the Social Security Act, from January 15, 2022, through the date of this decision." Tr. 25. It is "this decision"—a finding of non-disability—that Plaintiff appeals now.

## DISCUSSION

i.  **First, the ALJ properly accounted for Plaintiff's persistence limitations in the RFC.**

Contrary to Plaintiff's allegations, there is sufficient evidence that the ALJ properly considered Plaintiff's "moderate difficulty with persistence in attention" in formulating the RFC. Tr. 22, 790. It is true that the RFC must account for all a claimant's Medically Determinable Impairments, both severe and non-severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Plaintiff claims that the ALJ erroneously omitted persistence-based restrictions in the RFC, though she found that Plaintiff has a moderate limitation in that area. Pl.'s Soc. Sec. Br. 4—5; Tr. 19. "The ALJ's failure to establish persistence-related limitations is demonstrated by the ALJ's actual RFC that has no correlation to persistence deficiencies." Pl.'s Soc. Sec. Br. 5. Plaintiff does not challenge the moderate degree of limitation that the ALJ assigned to her ability to "concentrate,

7 – OPINION AND ORDER

persist, or maintain pace." *Id.* at 3—9; Tr. 18. But Plaintiff alleges that her RFC is inaccurate, which constitutes harmful error. Pl.'s Soc. Sec. Br. 9.

Plaintiff reasons that, since the ALJ "formulated an RFC that materially deviated" from the expert's credited opinion, the RFC is in error. Pl.'s Soc. Sec. Br. 6—7. Plaintiff argues that "a restriction [in the RFC] to understanding, remembering, and carrying out 'simple instructions' addresses the complexity of instructions involved, and has no relationship to whether Walsh is capable of sustaining her attention to carry out instructions or tasks." *Id.* at 5. Plaintiff maintains that her ability to persist is unrelated to whether a task is simple or complex. *Id.* Plaintiff offers that the RFC's restriction to "occasional" changes in a work setting does not adequately account for Plaintiff's "deficiencies in persistence." *Id.* Prescribing work without a specific production rate "has no relationship to whether Plaintiff is able to [be] persistent in finishing tasks." *Id.* This instruction "only addresses the speed in which tasks are performed and does not mitigate Walsh's inability to perform tasks without significant delays . . . ." *Id.* In sum, Plaintiff argues that the ALJ should have formulated a work restriction in the RFC that uniquely accommodates her persistence problems and "mitigate[s] the effects of this deficit entirely . . . ." *Id.* at 5—6.

This Court finds that the ALJ reasonably assessed Plaintiff's persistence limitations and accounted for them in the RFC. At the heart of Plaintiff's claim that the ALJ committed harmful error is the question of whether a restriction to simple tasks sufficiently addresses her persistence limitations. The Court holds that it does.

The ALJ determined that Plaintiff can handle "occasional" changes in a work setting, can make simple work-related decisions, and cannot perform work requiring "a specific production rate", including assembly line jobs. Tr. 20. This portion of the RFC relates to Plaintiff's moderate limitation "with regard to concentrating, persisting or maintaining pace . . . ." *Id.* at 19.

8 – OPINION AND ORDER

Importantly, "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace" when the assessment is "consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). In *Stubbs-Danielson*, the ALJ considered multiple consultative assessments stating that the claimant was "moderately limited" in her ability "to perform at a consistent pace without an unreasonable number and length of rest periods . . . ." *Id.* at 1173—74. The ALJ translated the claimant's pace limitation "into the only concrete restriction[] available to him . . .": a restriction to "simple tasks" recommended by an examiner. *Id.* at 1174. The court confirmed that a hypothetical describing someone who can do "simple, routine, repetitive work" properly captures "deficiencies in concentration, persistence, or pace." *Id.*

 Like in *Stubbs-Danielson*, the ALJ incorporated Plaintiff's moderate limitations regarding pace and persistence into the RFC using a restriction to simple tasks. Tr. 20, 790. The ALJ went beyond the adjudicator in *Stubbs-Danielson* by also restricting Plaintiff from "work requiring a specific production rate . . . ." Tr. 20. Plaintiff points to no evidence that her RFC falls short of mitigating persistence limitations according to the law. *See* Pl.'s Soc. Sec. Br. 3—9. Plaintiff simply states that her "persistence-related difficulties were improperly disregarded." *Id.* at 6. Plaintiff cites the ALJ's explanation for the mental RFC, specifically that "limits on workplace task complexity, decision-making, work setting changes, production rate pacing, and interaction with others" accommodate Plaintiff's limitations. *Id.*; Tr. 21—22. Plaintiff reasons that the ALJ's justification lacks specific mention of her "persistence-based impediments to work." Pl.'s Soc. Sec. Br. 6. This omission means to Plaintiff that "the ALJ found [her] unlimited in terms of her ability to persist when performing tasks." *Id.* Despite Plaintiff's argument, both the relative complexity of a task or instruction and whether Plaintiff would be required to produce a specified

9 – OPINION AND ORDER

output relate to her moderate persistence limitation. *See Stubbs-Danielson*, 539 F.3d at 1174 (an ALJ's hypothetical describing the ability to do simple, routine work captures deficiencies in persistence).

The ALJ is charged with "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). Plaintiff correctly identifies, "when posing a hypothetical question to the [vocational expert], the ALJ must include all of the claimant's impairments in the hypothetical." Pl.'s Soc. Sec. Br. 9; *see also Tackett* 180 F.3d at 1101. However, Plaintiff fails to establish that the hypotheticals used in her case are incomplete and therefore legally deficient. She instead concludes that "significant restrictions were improperly excluded from the RFC and the vocational hypotheticals . . . thereby creating error." Pl.'s Soc. Sec. Br. 8. Plaintiff even agrees that, in delivering a hypothetical, "an ALJ need not explicitly include the doctors' findings or narrative explanations verbatim . . . ." *Id.* Yet here, the hypotheticals posed to the vocational expert match Plaintiff's RFC almost verbatim. *See* Tr. 20, 43—46.

Despite Plaintiff's allegations, there is substantial evidence that the ALJ's hypotheticals are complete because she incorporated Plaintiff's persistence limitations through restrictions regarding task complexity and output rate. The Court finds no error in the ALJ's formulation of Plaintiff's RFC.

### ii. Second, the ALJ properly considered the effect of Plaintiff's seizures in a finding of non-disability.

The ALJ reasonably evaluated the effects of Plaintiff's non-epileptic seizures in her final disability determination. First, the ALJ found that Plaintiff's only severe physical impairment is non-epileptic seizures. *See* Pl.'s Soc. Sec. Br. 9; Tr. 17. Second, the ALJ placed non-epileptic seizure precautions into Plaintiff's RFC and included them in the hypothetical presented to the

vocational expert. Tr. 20—22; 43—45. However, Plaintiff argues that the ALJ erred by ignoring her "true residual difficulties caused by seizures that undermine her capacity to work for considerable periods of time . . . ." Pl.'s Soc. Sec. Br. 10. Plaintiff further contends that the ALJ improperly discounted Plaintiff's testimony that she experiences three to four seizures daily and that each one could incapacitate her for up to 15 minutes. *Id.* at 11—12; Tr. 37—38. "Despite the significance of Plaintiff's testimony regarding seizures, the ALJ disregarded how long seizures last and the preictal and postictal effects from seizures when forming the RFC . . . ." Pl.'s Soc. Sec. Br. 16. Plaintiff maintains that the ALJ erroneously dismissed her testimony about the non-epileptic seizures and how they affect her life. *Id.*

ALJs weigh a claimant's subjective testimony using a two-step analysis. *See, e.g., Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). ALJs first determine whether a claimant has a Medically Determinable Impairment that could reasonably be expected to result in the symptoms to which a claimant testifies. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035—36 (9th Cir. 2007). In this case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." Tr. 20. However, the ALJ declared that Plaintiff's testimony about her non-epileptic seizures contradicts medical evidence in the record. *Id.* at 20—21.

Plaintiff accuses the ALJ of generically stating, in boilerplate language, that her testimony is "not entirely consistent with medical evidence and other evidence in the record for the reasons explained in this decision." Pl.'s Soc. Sec. Br. 16; Tr. 20—21. In *Treichler v. Comm'r of Soc. Sec. Admin.*, the court found this same language insufficient to discredit the claimant's testimony but only because "the ALJ stopped after this introductory remark." 775 F.3d 1090, 1103 (9th Cir. 2014). Courts should "specifically identify the testimony she or he finds not to be credible

11 – OPINION AND ORDER

and . . . explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citation modified). In so doing, ALJs are not required to "perform a line-by-line exegesis of the claimant's testimony," but they must identify medical evidence that conflicts with Plaintiff's testimony. *Id.* Unlike the ALJ in *Treichler*, the ALJ in this case did just that.

Notably, the ALJ identified contradictions between Plaintiff's testimony about her non-epileptic seizures and statements to medical providers. *See, e.g.,* Tr. 21 (citing Tr. 464) (initial psychiatric evaluation notes include Plaintiff's statements that her seizures are considered pseudo seizures and that she is not in acute need of any medications); Tr. 21 (citing Tr. 1640) (ER visit notes include Plaintiff's statements that she had seven seizures in a row without postictal periods). Even when a claimant's subjective complaints appear in a provider's treatment notes, an ALJ can discredit them if the notes do not contain objective medical evidence of the same. *See, e.g., Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 n.3 (9th Cir. 2004) (if a provider's treatment notes do not include objective medical evidence in addition to a claimant's subjective descriptions of pain, then an ALJ may reasonably discredit them).

Substantial evidence supports the ALJ's formulation of the RFC based on medical evidence in the record that Plaintiff's symptoms are mild or moderate. Tr. 21; *see also Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (distinguishing "mild" or "moderate" impairments from disabling ones). The ALJ reasoned, "consistent with medical evidence, [Plaintiff's] mental impairments are found to result [in] limitations to seizure precautions" and stress reduction. Tr. 21. The ALJ further justified the RFC by explaining that Plaintiff's treatment had been conservative. Tr. 21—22 (citing Tr. 1195, 1632). Evidence of conservative treatment "is sufficient to discount a claimant's testimony" about the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

Thus, the ALJ did more than provide a detailed overview of Plaintiff's medical history; instead, she offered "clear and convincing *reasons*" for how she formulated Plaintiff's RFC. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)[1].

This Court also disagrees with Plaintiff's assertion that the ALJ failed to include all seizure-based limitations in her hypothetical to the vocational expert. Pl.'s Soc. Sec. Br. 18. As explained, the ALJ reasonably found that seizure precautions and stress reduction are consistent with medical evidence in the record. Tr. 21. Because the ALJ's hypothetical to the vocational expert included these restrictions, the hypothetical is not incomplete. Tr. 43—45; Pl.'s Soc. Sec. Br. 18. Substantial evidence supports that the ALJ reasonably concluded that Plaintiff is "not limited to a debilitating degree." Def.'s Br. 9, ECF No. 14.

## CONCLUSION

Because substantial evidence supports a finding of non-disability, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

DATED this 30th day of October 2025.

        _s/Michael J. McShane_____
                Michael McShane
           United States District Judge

---

[1] The Commissioner maintains that the Ninth Circuit's "clear and convincing" standard conflicts with the "substantial evidence" standard applied to Social Security cases. Def.'s Br. 7 n. 3, ECF No. 14; *see also* 42 U.S.C. § 405(g). Defendant asserts that the ALJ's findings pass both evidentiary standards. Def.'s Br. 7 n. 3. The Court agrees.